J-S23016-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANTWAN CLAYTON JONES | : | |
| | : | |
| Appellant | : | No. 2533 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 18, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0005539-2023

BEFORE: LAZARUS, P.J., MURRAY, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY MURRAY, J.: **FILED JULY 29, 2026**

Antwan Clayton Jones (Appellant) appeals from the judgment of sentence entered following his conviction by a jury of robbery, carrying a firearm without a license, theft by unlawful taking – movable property, theft by receiving stolen property, terrorist threats, possessing an instrument of crime, and simple assault.[1] After careful review, we affirm in part, vacate in part, and remand for resentencing limited to the restitution portion of Appellant's sentence.

The trial court's opinion provides the following factual history underlying this appeal:

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 6106(a)(1), 3921(a), 3925(a), 2706(a)(1), 907(a), 2701(a)(3).

Appellant was at Parx Casino in Bucks County, Pennsylvania, on July 31, 2023, gambling from around 7:09 a.m., until 4:10 p.m., cashing in $1,250.00 during that time. Appellant left the casino around 4:20 p.m. He was wearing white pants and a colorful blazer. [Appellant] went to a silver Nissan sedan, stood outside of the car, then sat in the car for about thirty (30) minutes. [At] around 4:57 p.m., [Appellant] left the Parx Casino parking lot.

At 5:27 p.m., Appellant's vehicle is seen making a left turn onto Street Road eastbound from Mechanicsville Road. The video then shows Appellant's vehicle at Street Road and Knights Road (near a Bank of America).

Trial Court Opinion, 1/27/26, at 1-2.

At around 5:30 p.m. the same day, the 39-year-old victim (the Victim), rode his bicycle to the Bank of America branch near Street Road and Knights Road in Bensalem Township, Pennsylvania. At 5:33 p.m., the Victim withdrew $1,000.00 from the automatic teller machine (ATM) outside of the bank. The Victim stepped away from the ATM and placed the funds inside of his pocket.

The trial court described what next transpired:

After the Victim took his money out of the ATM, there was a black man, with a black beard and wearing white pants, who also took money from the ATM, but his withdrawal appeared to only be one $100.00 bill. The Victim saw the man drive away in a four-door car. N.T., 10/2/24, [at] 96-114; [Exhs.] C-8 (screen shot of Victim's cash at ATM), C-9 (screen shot of Appellant's cash at ATM).[FN1]

---

[FN1] The Bank of America ATM surveillance [video] showed the Victim getting money from the ATM, and Appellant getting money out of the ATM afterward in a white [T]-shirt, white jeans with distressing or tears on the pants, and white shoes. The Victim is seen in the background putting his money in his wallet. Appellant left the ATM area. Appellant's vehicle was also on the ATM['s] surveillance video. N.T., 10/2/24, [at] 49-52, 96-114; [Exhs.] C-2 (ATM surveillance [video] from Bank

of America), C-6 (search warrant for Bank of America surveillance), C-7 (ATM surveillance [video] from Bank of America), C-18 (screen grab of the surveillance video from the ATM at approximately 5:33 p.m.).

Trial Court Opinion, 1/27/26, at 2-3 (punctuation modified; footnote in original).

At that time, the Victim mounted his bicycle and began to ride towards his home. However, on the way home,

the Victim saw the same man, who was behind him at the ATM, now in the area of the Kohl's Department store parking lot. The man pushed the Victim, knocking him off of his bike, cocked a black gun he was holding, and pointed it at the Victim's head from about one (1) foot away. The man kept saying words in English[2] to the Victim, which the Victim interpreted to mean, "[S]hut up or I'll kill you." The Victim "pray[ed] to the virgin that [the man] wouldn't hurt me." [The Victim] thought that he was going to be killed ….

\* \* \*

The man from the ATM took everything from the Victim's pockets, including the $1,000.00 the Victim had just taken out of the ATM to pay his rent, and the Victim's cell[ ]phone. The man dropped the Victim's wallet after taking the money out of it. The man got back in his car and drove toward Street Road.

… [The Victim eventually rode by bicycle to his home.] Bensalem Township Police Officer Adam Schwartz [(Officer Schwartz) testified] that the Victim's robbery call came in at 5:46 p.m. to 911[, *i.e.*, thirteen (13) minutes after the Victim first took his money out of the ATM,] and the officer arrived at the Victim's residence at 5:49 p.m. The Victim provided Officer Schwartz with

---

[2] The Victim did not speak English and testified at trial through an interpreter. N.T., 10/2/24, at 33. The Victim explained that he grew up in Ecuador and speaks only Spanish. *Id.* at 34. In addition, the Victim had a sixth-grade education and now works for McDonald's. *Id.*

a description of the robbery suspect and a copy of his ATM receipt….

&ast; &ast; &ast;

After the robbery, Appellant's vehicle drove (without encountering any red lights) back to Parx Casino. … As seen in the [surveillance] video, Appellant's car drives through the parking lot, up and down the aisles, and then goes through other parking spaces and aisles until he finally parks his car diagonally to one car and next to another car. N.T., 10/2/2024, [at] 95-96; **see** [Exh.] C-11 (traffic and Parx Casino surveillance video after the robbery).

Around 5:45 p.m., Appellant got out of his vehicle. He was wearing a white shirt, white pants, and white shoes. Then, [Appellant] went to the trunk, opened it, took something out of his waistband, and appeared to put it under the false floor in the trunk where the spare tire is located. Then, in front of another car and behind his car, Appellant completely changed his outfit into black or dark-colored shoes, black pants, a black shirt, and what appears to be the multi-colored blazer he had been wearing at the casino earlier. **See** [Exh.] C-5 (traffic cam and Parx surveillance video prior to robbery). Appellant walked through the parking lot and back into Parx Casino around 5:49 p.m. He then sat at a blackjack table and waited to put down $1,040.00 (possibly nine $100 dollar bills and seven $20 bills). Appellant's player card information continued until about 10:00 p.m. N.T., 10/2/24, [at] 114-130; [Exh.] C-13 (Appellant's Parx Player Card printout of bets).

The officers located Appellant and his vehicle around midnight on August 1, 2023. Appellant's vehicle was in the same location. Appellant was taken into custody in the casino. Appellant was wearing a gold watch, had a key fob for his car, a brown wallet, and $978.00 in Parx [Casino] chips.

Trial Court Opinion, 1/27/26, at 1-7 (punctuation modified; footnotes in original omitted; footnote added).

Officers executing a search warrant recovered the following items from Appellant's vehicle: a pawn receipt; a black firearm wrapped in a white rag

under a false floor near the spare tire; some loose Parx Casino chips; a white shirt matching the shirt seen in surveillance videos from the ATM and the scene of the robbery; and two pairs of white trousers. The firearm recovered from the vehicle had a round in the chamber and additional rounds in its magazine. DNA found on the firearm partially matched Appellant's DNA.[3]

On October 3, 2024, a jury found Appellant guilty of the above-described offenses. On December 18, 2024, for his conviction of robbery, the trial court sentenced Appellant to 57-114 months in prison, and restitution in the amount of $1,000.00. The trial court imposed no further sentences on Appellant's remaining convictions. On December 27, 2024, Appellant filed post-sentence motions, which were denied by operation of law on August 25, 2025. Thereafter, Appellant filed the instant timely appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

A. Did the trial court err in not giving a specific alibi jury instruction, where the evidence presented at trial placed the defense of alibi in issue?

B. Did the trial court impose an illegal sentence that must be vacated by failing to specify the method of restitution at the time of sentencing pursuant to 18 Pa.C.S.[A.] § 1106(c)?

C. Did the trial court abuse its discretion in imposing a manifestly excessive aggravated sentence where the sole basis for the aggravated sentence was a fact that is already contemplated by the deadly weapon sentencing enhancement increasing the applicable sentencing guidelines?

_____

[3] The firearm was operable.

Appellant's Brief at 5.

Appellant first challenges the trial court's failure to give his requested alibi jury instruction. *Id.* at 16. Appellant relies on the Victim's testimony that it took the Victim "10 to 15 minutes" to ride his bicycle from the ATM to the parking lot where the robbery occurred. *Id.* at 22. Appellant points out that Appellant's ATM receipt showed that Appellant made his withdrawal at 5:33 p.m. *Id.* Appellant further relies on the testimony of Bensalem Township Police Officer Christopher Pennington (Officer Pennington), who stated that Appellant's vehicle was observed traveling westbound on Street Road, towards Parx Casino, at 5:41 p.m. *Id.* Appellant posits,

> [i]f it took [the Victim] 10 to 15 minutes to ride from the ATM to the parking lot where the robbery occurred, and [Appellant] was observed on traffic camera footage at the intersection of Street Road and Mechanicsville Road at 5:41 p.m., less than 10 minutes after [the Victim] made the withdrawal, it would have been impossible for [Appellant] to have robbed [the Victim].

*Id.* at 22-23. Appellant asserts that "[r]egardless of who introduced the evidence relied upon by the defense, it is clear that … counsel argued that [Appellant] had an alibi to the jury and requested that the trial court give an alibi instruction." *Id.* at 23.

Appellant claims that the trial court's instruction was not sufficient. *Id.* Appellant directs our attention to case law stating that a specific alibi instruction is necessary "due to the danger that the failure to prove the defense will be taken by the jury as a sign of the defendant's guilt." *Id.*

(quoting *Commonwealth v. Roxberry*, 553 A.2d 986, 989 (Pa. Super. 1988), *affirmed*, 602 A.2d 826 (Pa. 1992) (citation omitted)). According to Appellant, the trial court issued a "modified version of the sample federal court instruction reproduced in the subcommittee note to the standard instruction" set forth at Pennsylvania Suggested Standard Jury Instruction (PSSJI) (Criminal) 3.11. Appellant's Brief at 25.

Appellant claims that our Supreme Court has made clear that the instruction must convey that

> a defendant's failure to prove the alibi is not in and of itself a basis for a finding of guilty and that a reasonable doubt could arise based upon alibi evidence **even where the defense is not wholly believed**. *Commonwealth v. Begley*, 780 A.2d 605, 629 (Pa. 2001). Our Supreme Court has held that the standard instruction satisfies this requirement. *See id.* Any generalized or lesser instruction would improperly suggest that "by introducing alibi evidence the defense assumed a burden of proof, which, if not met, could provide a basis for a finding of guilt. *Id.*

*Id.* at 25-26 (emphasis in original). Appellant claims that an alibi instruction must make clear that

> (1) any failure on the part of Appellant to prove his alibi defense should not be considered a basis for a finding of guilt; (2) Appellant, as a criminal defendant, had no duty to disprove any of the elements of the crimes which he was charged with committing; and (3) that a reasonable doubt could arise based upon Appellant's alibi even if the jury did not wholly believe the alibi evidence.

*Id.* at 27. Appellant contends that such an instruction was warranted based upon the Commonwealth's argument asking the jury to reject the Victim's testimony regarding the timeline of the events. *Id.*

The Commonwealth disagrees with Appellant's claim, arguing that the trial evidence did not establish an alibi. Commonwealth's Brief at 11. The Commonwealth asserts, "[b]ecause the evidence adduced at trial did not support an alibi defense, the trial court properly denied the instruction." *Id.*

According to the Commonwealth, Appellant relies upon the testimony of the Victim, who estimated the amount of time between the Victim's withdrawal of funds at the ATM and the robbery. *Id.* The Commonwealth points to the Victim's testimony that after leaving the ATM, "I was riding the bike, it took me like 10 to 15 minutes." N.T., 102/24, at 58. Defense counsel then asked the Victim, "So it took you 10 to 15 minute to ride the bike from where the ATM was located to where the robbery occurred, agreed?" *Id.* The Victim responded, "Yes." *Id.* The Commonwealth argues that this testimony

> is not evidence that [Appellant] was somewhere else at the time of the robbery. This testimony was merely an estimation of the passage of a brief period of time which [Appellant] asks this [C]ourt to take literally.

Commonwealth's Brief at 14. The Commonwealth asserts that

> [w]hile strict geographic impossibility is not required, this Court noted that where the witness could not say definitely whether the accused was somewhere else at the relevant time; and found that because the testimony did not necessarily put [the defendant] at a different location than that of the crime scene, nor did it necessarily cover the time period during which the crime was committed the evidence did not establish an alibi. [***Commonwealth v.***] ***Repaci***, 615 A.2d [796,] 798 [(Pa. Super. 1992)].

*Id.* (internal quotation marks omitted).

- 8 -

The Commonwealth asserts that the Victim's testimony did not place Appellant anywhere other than the scene of the crime, "but instead stated unequivocally that the man that was behind him at the ATM was the man who robbed him." *Id.* at 16. The Commonwealth points out that

> [Appellant] did not contest the fact that he was the man behind [Appellant] at the ATM and even argued to the jury that it was indeed him. If [the Victim's] testimony is taken as true, it is an estimate of a passage of time and not a precise statement of time which would preclude the possibility that [Appellant] was the actor, particularly when dealing with a short distance in a matter of minutes.

*Id.* The Commonwealth asserts that Appellant's claim is one of timing, "and not one of a location which makes it impossible he robbed" the Victim. *Id.*

The general principles of law that govern jury instructions are well settled:

> When an appellate court reviews a jury instruction, it should consider the entire charge as a whole, not merely isolated fragments, to ascertain whether the instruction fairly conveys the legal principles at issue. An instruction will be upheld if it clearly, adequately and accurately reflects the law. The trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law.

*Commonwealth v. Reid*, 259 A.3d 395, 432 (Pa. 2021) (citations and quotation marks omitted).[4] It is also "well-established that the standard jury

---

[4] "Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error." *Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa. Super. 2014) (citation omitted).

instructions are merely guides to aid trial judges." ***Commonwealth v. Soto***, 693 A.2d 226, 231 (Pa. Super. 1997).

An alibi is "a defense that places the defendant at the relevant time in a different place than the scene involved **and so removed therefrom as to render it impossible for him to be the guilty party**." ***Commonwealth v. Rainey***, 928 A.2d 215, 234 (Pa. 2007) (internal citations omitted; emphasis added). An alibi instruction "is required only in cases where a defendant's explanation places him at the relevant time at a different place than the scene involved and so far removed therefrom as to render it impossible for him to be the guilty party." ***Commonwealth v. Kolenda***, 676 A.2d 1187, 1190 (Pa. 1996). "When alibi evidence is introduced, the defendant is entitled to an alibi instruction." ***Commonwealth v. Johnson***, 966 A.2d 523, 537 n.5 (Pa. 2009).

> A trial court should instruct a jury to acquit if the defendant's alibi evidence, even if not wholly believed, raises a reasonable doubt as to whether he was present at the scene of the crime when the crime was committed. The instruction is critically important to offset the danger that the failure to prove the defense will be taken by the jury as a sign of the defendant's guilt.

***Id.*** (citations and quotation marks omitted).

Appellant chiefly relies on our Supreme Court's decision in ***Roxberry***. In ***Roxberry***, the defendant testified that he was in a bar one-half mile from the crime scene before, during and after the crime was committed. ***Id.*** In concluding that the defendant's testimony required an alibi instruction, our Supreme Court explained,

- 10 -

> [t]here is no minimum or threshold quantum of physical separation necessary for a defense to constitute an alibi, so long as the separation makes it impossible for the defendant to have committed the crime. It is theoretically possible to assert an alibi even when a crime occurs in the same building where the accused is located. If a convict is accused of stabbing a guard in the basement of a penitentiary and claims he was locked in a cell on the fourth floor when the crime was committed, he has asserted an alibi defense, because he was "in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party."

*Roxberry*, 602 A.2d at 828. With this in mind, we review the evidence presented at trial.

At trial, the Commonwealth presented the testimony of the 39-year-old Victim. N.T., 10/2/24, at 34. The Victim testified that on July 31, 2023, at around 5:30 p.m., he rode on his bicycle to Bank of America's ATM at 2325 Street Road in Bensalem Township. *Id.* at 34-35. While there, the Victim withdrew $1,000.00 from the bank's outside ATM. *Id.* at 35. The Victim testified that the cash received from the ATM was comprised of "some" hundred dollar bills, "but not all of them." *Id.*

While at the ATM, the Victim saw, behind him, a black man with a beard, dressed in white pants. *Id.* at 36. The Victim stepped away from the ATM, placed the cash inside of his wallet, and put his wallet in his pocket. *Id.* at 37. By this time, the other man at the ATM had departed from that location by car. *Id.* at 37. The Victim left on his bicycle to return home. *Id.* at 38.

While on his bicycle, in the area of a Kohl's parking lot and a barbershop, the Victim saw the black man with the beard and white pants. *Id.* According

- 11 -

to the Victim, the man, in his vehicle, "came and he knocked me off the bike, pushed me and knocked me off the bike and put a gun to my head." ***Id.*** at 38-39.  The man cocked the gun while pointing it at the Victim's head. ***Id.*** at 39.  The Victim testified that the man

> was pointing [the gun] at me and he was … speaking to me in English and kept saying … if you talk I will kill you, and I was just praying and praying to the virgin that he wouldn't hurt me….

***Id.*** at 41.  The Victim, who confirmed that this was the first time he had been robbed, testified that

> I was just there muted with no words[.]  I didn't know what to say because I kept thinking to myself [that] if I scream he's going to kill me, if I touch him or something he's going to do something, he's going to kill me.  I didn't know what to do, my head was just spinning around watching everything that happened.

***Id.*** at 42-43.  Although the man said words in English, the Victim testified that "what I understood was 'shut up or I'll kill you.'" ***Id.*** at 41.  The Victim continued,

> I thought I was going to be dead.  … I laid on the ground for another 20 minutes after.  And then I still, after I went home, I just didn't know what was happening.  It took me like an hour to tell my family what happened.

***Id.*** at 42.  The man, holding the firearm with one hand, took the Victim's money, cell phone, and everything from the Victim's pockets. ***Id.*** at 43.  The Victim then saw the man depart, driving "up towards Street Road." ***Id.*** at 45.  The Victim explained that he was going to use the funds to pay his rent. ***Id.***

The Victim confirmed that he eventually called the police:

> [T]hat day I was traumatized, I was very traumatized. I didn't know what to do. It was my stepdaughter who said that we should call the police so they could do something about it. I didn't want to do anything. I didn't know what to think.

*Id.* According to the Victim, the police officers came to the Victim's house. *Id.* at 46. The Victim told the officer what took place and accompanied officers to the crime scene. *Id.* at 47. Throughout their interaction, the Victim's daughter translated for the Victim. *Id.* The Victim showed his ATM receipt to the officers. *Id.* at 48. When presented with photos from the ATM's surveillance video, the Victim identified the man behind the Victim, at the ATM, as the perpetrator of the robbery. *Id.* at 51.

On cross-examination, the Victim agreed that it took him 10-15 minutes to ride his bicycle from the ATM to the location of the robbery. *Id.* The Victim acknowledged that he received the cash from the ATM between 5:33 to 5:34 p.m. *Id.* at 62. The Victim also testified that he saw his assailant's face for approximately 30 seconds, "when he first put me to the ground." *Id.* at 64. The Victim explained that "I was just lying on the ground like traumatized, not knowing. Like … out of myself." *Id.*

Officer Schwartz testified that at 5:46 p.m., the police department dispatcher received a call about the robbery. *Id.* at 77. According to Officer Schwartz, he was dispatched at 5:49 p.m., and arrived at the scene at the same time, because he "was literally in the parking lot adjacent to the [V]ictim's building." Officer Schwartz met the Victim and photographed the Victim's ATM receipt. *Id.* at 80. The receipt indicated the ATM transaction

took place at 5:33 p.m. *Id.* at 81. Thus, approximately 13 minutes elapsed between the ATM transaction and the call to the police department. *Id.*

Officer Pennington testified that in the course of his duties, he reviews data from traffic surveillance cameras. *Id.* at 96. Officer Pennington also uses license plate readers, and has been trained in their use. *Id.* According to Officer Pennington, on July 31, 2023, he received from Officer Schwartz a flash description of the robber and his vehicle. *Id.* at 97. He further received

> information [concerning] the direction of travel after the robbery occurred, and it was Street Road westbound towards Knights Road. At that point I brought up traffic cameras at the intersection of Street Road and Knights Road at the time of the initial interaction and then started playing them forward.
>
> ….
>
> Officer Schwartz provided me with a still image of a silver Nissan Altima sedan that was in the [ATM] parking lot … prior to the robbery at the bank, and I was able to determine that it was a newer model silver Nissan Altima. The vehicle had a front license plate on it, and then I was able to start watching the traffic cameras until that vehicle came across the intersection.

*Id.* at 97-98. Officer Pennington played the surveillance footage forward until he observed the Nissan Altima at Street Road at Knights Road. *Id.* at 98. Officer Pennington continued to follow the Altima by using traffic surveillance cameras. *Id.* at 98. He observed the vehicle travel on Streets Road, through the Mechanicsville Road intersection, to Casino Way, "where the vehicle is then seen making a right-hand turn into Parx Casino's parking lot." *Id.* at 98-99. Using license plate readers, Officer Pennington was able to discover

that the vehicle was owned by Enterprise, and rented by Appellant. *Id.* at 99-100.

Officer Pennington obtained, via a search warrant, Parx Casino surveillance footage. *Id.* at 101. Through this footage, Officer Pennington determined that Appellant had been at the casino at around 4:20 p.m. *Id.* at 104. At the time, Appellant was wearing a colorful blazer. *Id.* Appellant then departed the casino parking lot, at approximately 4:57 p.m., driving a gray or silver Nissan Altima. *Id.* at 105.

Using the traffic cameras, Officer Pennington was able to follow the Nissan Altima as it drove in the direction of the Bank of America ATM. *Id.* at 107. Officer Pennington identified, on the traffic surveillance video, the same Nissan Altima at the intersection of Street Road and Knights Road at approximately 5:41 p.m. *Id.* at 120. At that time, the vehicle was traveling in the direction of Parx Casino. *Id.* at 119. At approximately 5:45 p.m., Officer Pennington identified the same vehicle entering the casino's parking lot at 5:45 p.m. *Id.* at 121. Officer Pennington described the driver as wearing a white shirt, white pants, and white shoes. *Id.* at 121.

This Court has recognized that "[w]here a defense rests on timing rather than location, it is not considered an alibi." *Commonwealth v. Sileo*, 32 A.3d 753, 767 (Pa. Super. 2011) (*en banc*) (citing *Commonwealth v. Collins*, 702 A.2d 540 (Pa. 1997)). Relevantly, in *Collins*, at 4:00 a.m. on July 13, 1992, Lillian Albritton (Albritton) was awakened by the sound of

gunfire on the street outside of her home. *Id.* at 541. Albritton, looking outside of her window, observed "a driverless car drift across the street and come to rest in front of her home." *Id.* Inside of the vehicle, police subsequently found Andre Graves (Graves), deceased, with two bullet holes in the back of his head, and an exit wound under his eye. *Id.* at 542. Kevin Cofer (Cofer) later informed police that he, Graves, and the defendant were inside of the vehicle, when the defendant, alone in the back seat, shot Graves. *Id.*

At trial, the defendant claimed he was entitled to an alibi instruction, based on his testimony that he was dropped off one block from the location, immediately before the shooting took place. *Id.* at 545. Our Supreme Court disagreed, concluding that an alibi instruction was not warranted:

> [The defendant] testified that he was seated in the back of the car only moments before the murder, and that Cofer and Graves had dropped [the defendant] off one block before the location where the killing took place. [The defendant] further testified that he was so close to the murder scene that as soon as he heard gunfire, Cofer immediately ran up to him.
>
> [**The defendant's**] **defense depends on timing rather than on location**: [The defendant] asserts that he left the car just before the murder[,] whereas the Commonwealth's claim is that [the defendant] exited the car immediately afterwards. Therefore, [**the defendant**] **cannot assert that he was so far removed that he could not possibly have shot Graves**. On the contrary, [the defendant's] own testimony places him in the same seat from which someone fired multiple shots into the back of Graves' head, at a very short time before those shots were fired. Appellant asserts that he was not in the car at the time of the murder. He does not assert that he could not possibly have been there.

*Id.* at 545 (emphasis added).

Upon review, we conclude that Appellant's purported alibi defense is one of timing, not location. Although the Victim provided estimated times for his travel from the bank's ATM to the site of the robbery, the time of the robbery was narrowed through the evidence of the ATM receipt, the timing of the report to police, and the dispatch of the officer to the Victim's home. Appellant's claim basically disputes the timing of his travel near the robbery scene, and his defense does not render his participation in the crime impossible.

As the trial court explained in its opinion,

Appellant presented no evidence of alibi. In fact, both the Victim and Appellant were at the ATM around 5:33 p.m. to 5:35 p.m. Appellant was driving back to Parx Casino by 5:41 p.m. The Victim rode his bike home, told his daughter what had happened (his daughter spoke Spanish and English), and they called 911 by 5:46 p.m. This timeline did not make it "impossible" for Appellant to have robbed the Victim between 5:35 and 5:41 p.m. (at 5:41 p.m.[,] Appellant's car is near the robbery scene and observed on surveillance heading back to Parx Casino).

Nevertheless, [the trial court] gave what it considered to be an appropriate jury instruction based on the evidence presented at trial and the suggested jury instruction written in the Subcommittee Note under the Alibi instruction, § 3.11.

Trial Court Opinion, 1/27/26, at 15. We agree with the trial court that no alibi instruction was warranted under these circumstances. Appellant's first issue merits no relief.

Appellant next argues that the trial court imposed an illegal sentence by failing to specify the method of restitution pursuant to 18 Pa.C.S.A. § 1106(c).

- 17 -

Appellant's Brief at 27. Appellant asserts that the trial court ordered "restitution in the amount of $1,000 to [the Victim] as a direct sentence." *Id.* However, Appellant claims that the trial court's failure to specify the method of restitution rendered the sentence illegal pursuant to 18 Pa.C.S.A. § 1106(c)(2). Appellant's Brief at 28. Citing **Commonwealth v. Royal**, 312 A.3d 317 (Pa. Super. 2024), Appellant argues that the trial court's subsequent written sentencing order, which provided the method of payment, does not resolve the illegality of the original judgment of sentence. Appellant's Brief at 28 (citing **Royal**, 312 A.3d at 325-26).

Appellant further disputes the trial court's statement, in its opinion, that it ordered restitution to be paid "in a lump sum[.]" *Id.* at 29. According to Appellant, "[n]owhere in the sentencing record or on the written order imposing sentence is there any indication that the trial court ordered that the $1,000 be paid in a lump sum." *Id.* Citing **Royal**, Appellant asserts that payment in a lump sum is not a default category presumed to apply when the sentencing order omits the method of restitution. *Id.*

The Commonwealth agrees with Appellant's claim of an illegal restitution sentence. Commonwealth's Brief at 17. The Commonwealth asserts that the appropriate remedy is for this Court to vacate the restitution portion of Appellant's sentence, and remand for resentencing limited to restitution. *Id.* at 17-18.

A challenge to the trial court's failure to comply with 18 Pa.C.S.A. § 1106 is a non-waivable challenge to the legality of the sentence. ***Commonwealth v. Laur***, 295 A.3d 241, 243 (Pa. Super. 2023). In reviewing the legality of a sentence, our scope of review is plenary, and our standard of review is *de novo*. ***Royal***, 312 A.3d at 325.

Section 1106 provides for mandatory restitution "[u]pon conviction for any crime wherein … [the] property of a victim has been stolen, converted or otherwise unlawfully obtained[.]" 18 Pa.C.S.A. § 1106(a). Section 1106 further provides that

> [a]t the time of sentencing **the court shall specify the amount and method of restitution.** In determining the amount and method of restitution, the court:
>
> (i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.
>
> (ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.

***Id.*** § 1106(c)(2)(i-ii) (emphasis added). As we stated in ***Royal***, the failure to comply with Section 1106(c)(2) results in an illegal sentence. ***Royal***, 312 A.3d at 325.

Instantly, our review discloses that at the sentencing hearing, the trial court ordered Appellant to pay restitution, but failed to specify the method of restitution. At the hearing, the trial court stated to Appellant,

[y]ou are ordered to pay restitution in the amount of $1,000 to the Victim in this matter. And there's no further penalty on the other Information, the other counts of the Information.

N.T., 12/18/24, at 24-25. The written sentencing order likewise fails to specify the method of restitution. Thus, the trial court's sentence of restitution fails to comply with 18 Pa.C.S.A. § 1106(c)(2) and thus, is an illegal sentence. Consequently, we must vacate the portion of Appellant's judgment of sentence that ordered restitution, and remand for resentencing solely as to restitution. *See Royal*, 312 A.3d at 326.

In his third and final issue, Appellant claims the trial court abused its discretion by imposing a manifestly excessive aggravated sentence, based upon his possession of a firearm during the robbery. Appellant's Brief at 30. Appellant's issue challenges the discretionary aspects of his sentence.

"There is no automatic right of appeal from the discretionary aspects of a sentence." *Commonwealth v. Glawinski*, 310 A.3d 321, 325 (Pa. Super. 2024) (citation omitted). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part analysis to determine

(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.* (citation omitted).

- 20 -

Here, Appellant filed a timely notice of appeal, preserved the issue in his post-sentence motion, and included the required Rule 2119(f) statement in his brief. *See* Appellant's Brief at 13-15.

We next consider whether Appellant presents a substantial question. "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. McLendon***, 293 A.3d 658, 670 (Pa. Super. 2023) (quotation marks omitted). In determining whether a substantial question exists, we do not

> examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

***Glawinski***, 310 A.3d at 325 (citation omitted).

Instantly, Appellant claims that the trial court, in sentencing him to 57-114 months in prison, imposed a sentence in the aggravated range of the sentencing guidelines. Appellant's Brief at 13-14. According to Appellant,

> [t]he trial court stated that the use of a firearm was "**the** aggravating factor in this case." However, this fact was already accounted for by the deadly weapon enhancement[,] which increased the applicable sentencing guidelines on count one. The trial court never acknowledged this fact at sentencing and denied [Appellant's] post-sentencing motion raising this claim without a hearing.

*Id.* at 14 (emphasis in original; citation omitted). Appellant claims that the trial court's improper consideration of a factor already included within the sentencing guidelines, as the sole basis for increasing Appellant's sentence, constituted an abuse of discretion. *Id.* We conclude Appellant's issue raises a substantial question. *See Commonwealth v. Goggins*, 748 A.2d 721, 731 (Pa. Super. 2000) (stating that a claim that the sentencing court improperly relied on factors already taken into account in the sentencing guidelines raises a substantial question). Accordingly, we will consider Appellant's challenge to the discretionary aspects of his sentence.

Our standard of review for a discretionary sentencing challenge is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Warren*, 350 A.3d 1018, 1031 (Pa. Super. 2025) (citation omitted).

The Sentencing Code sets forth the factors a sentencing court must consider when formulating a sentence, stating that

> the court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with the … protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

- 22 -

42 Pa.C.S.A. § 9721(b). We further observe that,

> although the sentencing guidelines are an important factor in sentencing, they are but only one factor when determining an individualized sentence: The guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors - they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence.

**Commonwealth v. Holiday**, 954 A.2d 6, 13 (Pa. Super. 2008) (citation, paragraph break, and brackets omitted).

When imposing a sentence of total confinement, a court must consider the sentencing guidelines as well as "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "The balancing of the sentencing factors is the sole province of the sentencing court." **Commonwealth v. Agugliaro**, 342 A.3d 105, 116 (Pa. Super. 2025). While a sentencing court "is required to consider the sentence ranges set forth in the sentencing guidelines," it is not bound by them, as they are purely advisory in nature and "merely one factor among many that the court must consider in imposing a sentence." **Warren**, 350 A.3d at 1031 (citation omitted).

Moreover,

> [i]n imposing an aggravated-range sentence, the lower court is permitted to consider any legal factor. The trial court is vested with broad discretion in determining the defendant's sentence since the court is in the best position to view the defendant's

- 23 -

character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime.

*Id.* at 1031-32 (citation omitted).

We agree with Appellant that, "when fashioning a sentence, a sentencing court may not 'double count' factors already taken into account in the sentencing guidelines." *Goggins*, 748 A.2d at 732. However, while it is impermissible for a court to "double count" factors already included within the sentencing guidelines as the sole reason for increasing a sentence to the aggravated range, sentencing courts may consider "other factors already included in the guidelines if[] they are used to supplement other extraneous sentencing information." *Commonwealth v. Simpson*, 829 A.2d 334, 339 (Pa. Super. 2003) (discerning no abuse of the trial court's discretion when it considered the defendant's prior conviction history in conjunction with other factors, including the impact on his victim, the threat he posed to the community, the lack of successful rehabilitation, and the fact that he was on probation and under supervision at the time of the offense).

Our review of the sentencing transcript discloses that the trial court did not "double count" Appellant's possession of a firearm during the robbery, but considered as a factor Appellant's conviction of carrying a firearm without a license. After placing the relevant sentencing guidelines for robbery on the record, the sentencing judge explained that

> I could impose additional sentences for the use of a firearm. I think that's the aggravating factor in this case, but rather than give you a longer sentence, which would be required if I wanted

to add the firearm charge on here, I'm just considering that as an aggravating factor, that's what leads into the aggravated range, and that's why I'm imposing that sentence. I think it will give you an earlier path to parole, and I'm hoping it reduces the classification of your treatment.

*See* N.T., 12/18/24, at 23-24. As the trial court explained in its opinion,

[t]o the extent that the possession of the firearm could be considered "double counting" because it was already considered in the enhanced guidelines, Appellant was also carrying the firearm without a license and with the intent to employ it criminally, which this court believed could be considered an aggravating factor in this court's overall sentencing scheme in order to fashion a sentence that involved less incarceration (especially where this court chose not to impose a consecutive sentence for Appellant's 18 Pa.C.S.A. § 6106 conviction or possessing an instrument of crime, 18 Pa.C.S.A. § 907).

Moreover, as permitted by the language in the Sentencing Guidelines, the court could legally consider[,] as an aggravating factor[,] that the gun was cocked and ready to be easily fired during the [r]obbery[,] making the risk of causing serious bodily injury or death to the Victim, even accidentally, high.

Trial Court Opinion, 1/27/26, at 19-20 (citations format modified). We agree. The trial court did not "double count" Appellant's use of a firearm, but instead considered his additional convictions as an aggravating factor. Under these circumstances, we discern no abuse of the trial court's sentencing discretion. Appellant's third issue merits no relief.

For the reasons discussed above, we affirm in part and vacate in part Appellant's judgment of sentence. Specifically, we vacate the portion of Appellant's judgment of sentence that imposed restitution. We remand for resentencing limited to the reimposition of $1,000.00 in restitution and an on-the-record specification of the method of payment.

- 25 -

Judgment of sentence affirmed in part and vacated in part. Case remanded for further proceedings consistent with this memorandum. Superior Court jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/29/2026